[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes to this court on father's Motion for Modification of Custody. A four day hearing was held January of 1997.
Based upon a preponderance of the credible, relevant and legally admissible evidence, the court finds as follows:
Gary and Barbara Genovese married six months prior to Brian's birth in 1984. They divorced four years later. They reconciled in 1990 and remarried in 1991. In March 1994 they divorced a second time.
They agreed to joint custody of Brian (born June 18, 1984) and continued to live together until November of 1994 when mother left the family home. During July of 1995, mother and child moved to Gayesville, Alabama to live with Brian's grandmother.
On June 20, 1995, the Honorable Maureen M. Dennis, in an order she characterized as "only temporary" permitted Brian's move to Alabama, denying defendant father's injunction.
Judge Dennis described Brian, on that date, as "in distress" and "in crisis."
Prior to this removal, Brian's paternal grandparents, Geri CT Page 7380 and Daniel Genovese, were significantly involved in meeting Brian's needs while his parents worked. Brian spent each afternoon, from after school to early evening, at their house. He was there weekends and vacations, too. Geri Genovese, 58 years old and in good health, played a major role in Brian's education and medical, mental health and dental care.
Brian has a long and detailed history of special needs.
In June of 1992, he was diagnosed as having Attention Deficit Disorder and was placed on Ritalin. He was psychologically evaluated in 1993 and 1995. Both psychologists agreed he showed evidence of Attention Deficit Hyperactivity Disorder and learning disabilities in the areas of reading and writing. Both professionals expressed concern for his emotional health.
Dr. Frank Safran, who conducted the 1995 evaluation, found Dysthymic Disorder, a Reading Disorder and a Disorder of Written Expression. He found Brian's level of adjustment to be "severe."
Brian began weekly counseling sessions with Ms. Diane Safran in the fall of 1994, who felt he required special educational services. Without these, she predicted, Brian would be at high risk for physical, emotional, social and academic difficulties.
After moving to Alabama, Brian's counseling was reduced to monthly sessions.
In her February 15, 1996 evaluation and report, Family Relations Counselor Leslie Raider credibly advised that father had a better grasp of Brian's needs, that he was better able, with the help of his mother, to follow through in structuring Brian's life and activities and in providing treatment. The level and frequency of therapeutic and educational support and the monitoring of Brian's Attention Deficit Disorder was significantly less when Brian was under his mother's care in Alabama than while he was with his father and paternal grandparents in Connecticut.
Counselor Raider credibly concluded that father seems better able to provide for Brian's educational, emotional and behavioral needs. She also noted that the care Geri Genovese provided was beneficial.
She recommended that father be granted sole custody of Brian. CT Page 7381
In an updated report, October 16 of 1996, Family Relations Counselor Leslie Raider reported her contacts with Brian, his mother, his father, Brian's Connecticut Reading Specialist, Elysa R. Safran, and Brian's attorney. She also had reports from principal, Nancy P. Smith, school counselor, Paul K. McWhorter, report cards, and the Stanford Achievement Test Scores from Gayesville School in Alabama, a letter from Gayesville teachers, Gail Williams and Teresa Parks, a note from James P. Walker, DDS, and an evaluation and tutorial report from Sharon L. Rohlfs.
Though in sixth grade, Brian's reading skills were then generally at a fourth grade level. He had low scores in reading comprehension, language and language mechanics on the 1996 Stanford Achievement Test. The reading specialist at the Attention Deficit Disorder Institute in Westport, Connecticut, who tested Brian during the summer of 1996, felt that repetition of sixth grade should be considered and that Brian should receive reading remediation throughout the summer and the academic year. While with his father during the summer, Brian was tutored by Sharon L. Rohlfs, who emphasized decoding skills, reading comprehension, vocabulary development and written expressive language.
In Alabama Brian sees counselor Lewis Hanson monthly. His Alabama psychiatrist, Knalid Soomro who also sees Brian monthly, reported confronting mother for her unilateral medication changes, increasing Brian's Ritalin. She also terminated the Ritalin without consulting Brian's father.
Leslie Raider concluded that there did not appear to be any basis to modify her earlier evaluation. She continues to recommend that father be granted sole custody of Brian.
Attorney Julie Irene Foster had strongly recommended that Brian be allowed to move to Alabama with his mother when that issue arose.
In her current report to the court, Attorney Foster credibly reported that the paternal grandmother had a major role in the medical, educational and emotional care of Brian, that Geri Genovese was the only babysitter Brian ever knew, that the paternal grandmother's home was a perfect setting for a young man to flourish and that Brian's mother did not prioritize his visits with his father. CT Page 7382
After an extended review of Brian's needs, mother's defense of her custodial behavior and decisions and father's focus on remediation and the extensive help Brian received when in his father's care, Attorney Foster recommended that father receive residential custody.
Brian's school centered tutoring in Alabama consists of a program with an English teacher, in which teachers in the Alabama School, who are also often sports coaches, offer their time, generously without charge, to the students. Alabama did not find Brian to be learning disabled and suggested merely preferential seating. The Connecticut educators and specialists, on the other hand, credibly, found the problem to be more meaningful and addressed it through PPT groups, recommendations of special education support services, counseling, remedial reading help, summer tutoring, testing by a properly qualified evaluator, a resource room teacher, a reading specialist and teachers with special education training.
Brian prefers school in Alabama because the classes are large. He can hide. He is smarter than some of his classmates. Teachers don't call on him. He doesn't have to do the work. In Connecticut, people were always on him. And his father made him do homework.
Dr. Frank Safran, a licensed clinical psychologist, was a credible witness throughout. He saw father as supportive and concerned, mother as dismissive and basically non-participatory.
Based on his experience with mother, he questioned whether she would monitor the Section 504 Public Education Plan developed for Brian or whether she was capable of doing so. He stated that the therapeutic treatment received by Brian at CED Mental Health Center was insufficient and not frequent enough. Brian is in need of weekly individual therapy.
The Alabama 504 PEP did not involve the school. It discussed only what Brian was to do. He, alone, had the initiative. Dr. Safran stressed the need for a case manager, frequent communication between parent and teachers, two sets of books, a computer keyboard and instructions.
After both mother and father testified, discussed the issues set forth herein and responded to questions posed by court and CT Page 7383 counsel, the court found father to be the more credible witness.
Therefore, having reviewed the evidence and the sworn financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter and the following orders shall apply:
1. MODIFICATION
The court finds the existing custodial and visitation orders in this case were not based upon the best interests of Brian, and are to be modified.
2. CUSTODY
Father is granted sole custody of Brian. Brian is to be returned to the State of Connecticut forthwith to live with his father.
3. MOTHER'S ACCESS
Mother shall enjoy access to Brian:
a. Each Spring school vacation
 b. Thanksgiving school vacations in odd numbered years, from Wednesday after school to Sunday.
 c. Christmas vacations from the day after school recesses until December 30th in even numbered years and from December 26th until December 30th in odd numbered years
 d. Summer, beginning the summer of 1998, from one week after the close of school to two weeks prior to the opening of school.
 e. The second weekend of each month, from Friday after school until Sunday at 7 p. m. in Connecticut, subject to two weeks advance written notice, not to interfere with Brian's school schedule or therapeutic appointments.
Joseph L. Steinberg CT Page 7384 Presiding Judge